UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILE NO. 3:24-cv-132

| | | |
|---|---|---|
| ROSLYN MCMANUS | : | |
|     Plaintiff, | : | |
| | : | |
| | : | |
| | : | **COMPLAINT** |
| BOJANGLES' RESTAURANTS, INC., | : | |
|     Defendant. | : | (Jury Trial Requested) |
| | : | |

_____

COMES NOW the Plaintiff, ROSLYN MCMANUS ("Plaintiff"), by and through her undersigned attorney, and hereby files this Complaint for damages and other legal and equitable relief from Defendant, BOJANGLES' RESTAURANTS, INC. ("Defendant"), for unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, and state law.

## JURISDICTION & VENUE

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims, which arise from a common nucleus of operative facts such that they form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and the unlawful practices complained of occurred within this district.

## PARTIES

5. Plaintiff (Race - African American; Sex – Female; Age – 54 (DOB: 09/08/1969)), is and was, at all times relevant to this Complaint, a resident of North Carolina.

6. At all relevant times, Defendant, a Delaware Corporation, operated a chain of fast-food restaurants in North Carolina, including a restaurant located at 9075 Lawyers Road, Mint Hill, NC 28227.

7. Defendant is a "person" within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. At all relevant times, Defendant has continuously done business in the State of North Carolina and has continuously maintained at least fifteen (15) employees.

9. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under §§ 701(b), (g), and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

10. On or around August 26, 2021, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants engaged in race, sex, and age discrimination and retaliation. Plaintiff attached a "Timeline of Events" to her filed Charge of Discrimination in which she identified individuals and more particularly described the discriminatory events giving rise of her claims.

11. On or around September 10, 2021, Plaintiff signed and submitted an Agreement to Mediate. Plaintiff received no response from Defendant, and no mediation was scheduled.

12. On or around July 27, 2023, after multiple requests for extension, Defendant filed a position statement in response to Plaintiff's charge of discrimination. Defendant's position statement did not fully respond to Plaintiff's charge of discrimination.

13. On November 7, 2023, the EEOC issued Plaintiff her Notice of Rights to Sue.

14. On or about December 19, 2023, Plaintiff was informed by the EEOC investigator (Debbie Smith) assigned to her case, believes, and therefore alleges that, aside from Defendant's position statement, no other fact-finding methods (e.g., interviews, requests for information, interrogatories, or affidavits) were employed during the investigation of Plaintiff's charge of discrimination. Upon information and belief, the EEOC investigator relied solely upon Defendant's position statement to close the investigation and issue Plaintiff's Notice of Rights to Sue.

## STATEMENT OF FACTS

15. On November 19, 2019, Plaintiff (Race - African American; Sex – Female; Age – 54 (DOB: 09/08/1969)) submitted a job application to Defendant for a position as a General Manager.

16. Upon information and belief, Plaintiff was well-qualified for the position as she had prior experience as a manager at a Hardees restaurant and the Carowinds Food and Beverage Department.

17. On December 4, 2019, Defendant hired Plaintiff to work as an Assistant General Manager ("AGM") at one of Defendant's restaurants.

18. Upon her hiring, Plaintiff was told that she would be promoted to General Manager ("GM") as soon as an opening was available.

19. Plaintiff worked as a crew member at Defendant's Restaurant located at 4435 Randolph Road, Charlotte, North Carolina 28211 ("Randolph Restaurant") until the next AGM training class became available on or around January 6, 2020.

20. From approximately January 6, 2020, until approximately February 10, 2020, Plaintiff attended training at both Defendant's restaurant, which was located at 11420 Beavers Farm Road, Charlotte, North Carolina 28215 ("Beavers Farm Restaurant"), and Defendant's Corporate Training Center, known as "Bo University."

21. Plaintiff was trained at the Beavers Farm Restaurant with multiple other trainees, including an African American male, an African American female, and a Hispanic Female. During the five (5) weeks of training, Plaintiff made multiple reports to her superior, an Area Director known as "Mr. Vahid," of racially derogatory comments and gestures.

22. On one occasion during Plaintiff's training period, someone had spread flour over a biscuit table and written in the flour "Support Trump 2020." Upon information and belief, the employees at the Beavers Farm Restaurant were told that it was a joke, and no one should be concerned with it.

23. Plaintiff perceived the way that the "Support Trump 2020" slogan was spread as racist due to President Trump's polarization, and at times perceived racial insensitivity, particularly regarding issues involving racial protests. Moreover, some individuals who supported President Trump in 2020 were also associated with extremist or white supremacist groups.

24. Further, during Plaintiff's training period, Robert Wonyetye ("R.W."), who upon information and belief was, at all relevant times, Defendant's Senior Director of Field Training, would visit the Beavers Farm Restaurant. Upon information and belief, while at the Beavers Farm Restaurant, R.W. would only address white employees.

25. On or around February 12, 2020, Plaintiff received the necessary certification and began working as an AGM at Defendant's restaurant located at 4435 The Plaza, Charlotte, North Carolina 28215 ("Plaza Restaurant").

26. From approximately February of 2020 until on or around July 23, 2020, Plaintiff worked as an AGM at the Plaza Restaurant. During that time, upon information and belief, several GM positions became open.

27. On or around March 19, 2020, Plaintiff reminded R.W. that she was promised a GM position. However, Plaintiff was overlooked and was not offered an open GM position for several more months. Upon information and belief, other white individuals were offered and hired for those GM positions that became available between February and July of 2020.

28. On or around July 23, 2020, Plaintiff was offered and accepted a GM position at Defendant's restaurant located at 9075 Lawyers Road, Mint Hill, North Carolina 28227 ("Lawyers Road Restaurant").

29. Upon information and belief, while working as a GM at the Lawyers Road Restaurant, Plaintiff was supervised by an Area Director named Katie Murry ("K.M."), a White female.

30. Throughout her time supervising Plaintiff, K.M. committed racially derogatory acts and made several racially derogatory comments towards African American employees at the Lawyers Road Restaurant, including, but not limited to the following:

    a. On one occasion, Plaintiff inquired about another management role. In response, K.M. stated that other employees were a "better fit" for the role. When Plaintiff asked what K.M. meant by "better fit," K.M. responded "just look at you."

    b. On another occasion, K.M. made monkey noises and gestures around an African American employee.

c. On other occasions, K.M. referred to African American managers as "dumb." Upon information and belief, K.M. did not make these comments about White managers.

d. On several occasions, K.M. made several derogatory comments about African American female employees who K.M. deemed to be overweight. Upon information and belief, K.M. only made these comments about African American female employees. For example, K.M. stated that an employee looked like a "big pumpkin," stated that the ankles of another employee "[were] crying," referred to several other employees as "disgusting," and stated that an employee "needed to get a gym membership."

31. In addition, during her time as GM at the Lawyers Road Restaurant, Plaintiff witnessed other discriminatory actions in which African American employees were not provided the same training and advancement opportunities as White employees.

32. With respect to training and advancement, Plaintiff supervised three African American employees who held shift manager positions at the Lawyers Road Restaurant ("Shift Managers").

33. Each of the Shift Managers requested training to become certified. Prior to or around November of 2020, Plaintiff reported to K.M. that the Shift Managers would like to become certified. K.M. responded that they would need to wait for the proper training class to open.

34. By early March of 2021, K.M. had not placed the Shift Managers in a training class to receive their certification.

35. Upon information and belief, training classes became open; however, they were not offered to the Shift Managers.

36. In or around March of 2021, Plaintiff hired a White male to work as a member in the kitchen crew ("Crewmember") at the Lawyers Road Restaurant.

37. Upon information and belief, the Crewmember had no prior experience working in a restaurant.

38. The Crewmember had worked in the kitchen for approximately two (2) weeks when K.M. visited the Lawyers Road Restaurant. On or around March 19, 2021, K.M. informed Plaintiff that the Crewmember would be attending a training class and assigned a new position as AGM.

39. At the time the Crewmember attended the training to become certified, K.M. had not informed Plaintiff that there was an open training class and the Shift Managers, who had been waiting for months, had still not had the opportunity to attend the requested training.

40. Upon information and belief, at the time Plaintiff was a GM at the Lawyers Road Restaurant, African American employees were paid less than White employees.

41. Upon information and belief, Plaintiff, as GM, was responsible for payroll at the Lawyers Road Restaurant. Thus, Plaintiff was typically able to access and observe the pay rates of employees at the Lawyers Road Restaurant.

42. Upon information and belief, in or around November of 2020, K.M. hired a White male as an AGM. After he was hired, K.M. blocked Plaintiff from being able to see that employee's pay rate. During an argument between the newly hired AGM and another employee, it came out the newly hired AGM's pay rate was higher than Plaintiff's pay rate.

43. Upon information and belief, at the time Plaintiff was a GM at the Lawyers Road Restaurant, Plaintiff was not provided the same help and support afforded to White GMs.

44. During Plaintiff's time as GM, several of Defendant's restaurants, including the Lawyer's Road Restaurant, were suffering from staffing shortages.

45. Upon information and belief, Defendant allowed several restaurants to work a modified schedule and either open or close early to compensate for the staffing shortages.

46. Plaintiff requested a modified schedule due to her lack of employees; however, Plaintiff's request was denied. When Plaintiff inquired as to why the Lawyers Road Restaurant was not able to work a modified schedule, she was told that no more locations could work a modified schedule and that she "just needed to cover it."

47. Plaintiff was required to fill in when the Lawyers Road Restaurant was short staffed.

48. Upon information and belief, between February 2021 through June 2021, Plaintiff was working an average of eighty (80) hours per week due to the staff shortage and Defendant's refusal to approve a modified work schedule at the Lawyers Road Restaurant.

49. Upon information and belief, Plaintiff was not able to report more than fifty (50) hours per week because she was a salary-paid GM. Thus, Plaintiff did not receive compensation for the excess of hours worked.

50. On or around May 3, 2021, Plaintiff stated to management that she would be turning in her resignation. This resignation included a two (2) month notice. In response, Defendant's Area Director, Zachary Caines ("Z.C."), told Plaintiff that he would get her some help if she did not resign.

51. Upon information and belief, Plaintiff's resignation was never filed, and Plaintiff intended to continue working as a GM at the Lawyers Road Restaurant based on Z.C.'s promise.

52. Upon information and belief, Defendant was aware that Plaintiff had not turned in her resignation on or around May 3, 2021, and that Plaintiff intended to continue working as a

GM, because Defendant continued to schedule Plaintiff to work as a GM for several weeks after Plaintiff's two (2) month notice would have ended.

53. Upon information and belief, as of July 3, 2021, Plaintiff was scheduled to work through July 18, 2021.

54. Upon information and belief, as of July 5, 2021, Plaintiff was scheduled to work through July 24, 2021.

55. On or around July 7, 2021, Plaintiff reported the issues described herein via phone call to Gloria Williams, who upon information and belief, worked in the Defendant's Human Resource Department.

56. In response, Ms. Williams stated that Plaintiff's allegations were taken seriously, and that Plaintiff needed to put the allegations in writing and email them to Ms. Williams.

57. On July 7, 2021, after her phone call, Plaintiff promptly emailed her concerns of unlawful employment practices to Ms. Williams and the Defendant's Human Resources Department at their company email addresses, namely [gwilliams@bojangles.com](mailto:gwilliams@bojangles.com) and [people@bojangles.com.](mailto:people@bojangles.com)

58. Later in the afternoon of July 7, 2021, Plaintiff was informed by a shift manager on duty at the Lawyers Road Restaurant that Z.C. and another manager were at the Lawyers Road Restaurant and had copies of Plaintiff's email to Ms. Williams and the Human Resources Department. Plaintiff was also informed that Z.C. and the other manager were reading Plaintiff's email and laughing.

59. During the afternoon of July 7, 2021, Plaintiff received email notifications that her work shifts, which had been previously scheduled through July 24, 2021, had been deleted. Plaintiff's access to the system had also been terminated.

60. Upon information and belief, Z.C. was responsible for deleting Plaintiff's shifts and removing her from the system.

61. Plaintiff interpreted Z.C.'s actions to mean that she had been terminated.

## **FIRST CAUSE OF ACTION**
**Violation of Title VII 42 U.S.C. § 2000e, et. seq.**
**Retaliation**

62. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

63. Plaintiff engaged in protected activity by complaining to her superiors and Defendant's Human Resources Department about the issues alleged herein, including suspected violations of Title VII.

64. Defendant retaliated against Plaintiff when Defendant's Human Resources Department sent Plaintiff's confidential email to Z.C.

65. Defendant retaliated against Plaintiff when Z.C. printed off Plaintiff's email to the Human Resources Department, shared it with other employees, and began laughing about it.

66. Defendant further retaliated against Plaintiff when Z.C. effectively fired Plaintiff by deleting Plaintiff's schedule and removing Plaintiff's access to the system.

67. In the alternative, Defendant retaliated against Plaintiff when Z.C. caused Plaintiff's constructive discharge.
    a. Z.C. took deliberate actions to make Plaintiff's working conditions intolerable.
    b. The conditions created by Z.C. were in excess of those faced by other employees, and a reasonable employee in Plaintiff's position would have felt compelled to resign.

    c. The conditions created by Z.C. were actually intolerable to Plaintiff such that she felt she could not come back to work.

68. Plaintiff suffered the adverse actions described herein because she reported her concerns of suspected violations of Title VII to her superiors and Defendant's Human Resources Department.

69. Defendant's adverse actions would be likely to dissuade a reasonable employee from participating in protected activity.

70. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

## SECOND CAUSE OF ACTION
### Violation of Title VII 42 U.S.C. § 2000e, et. seq.
### Racial Discrimination—Disparate Treatment in Firing and/or Discharge

71. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

72. As an African American female, Plaintiff belongs to a statutorily protected category.

73. Plaintiff was qualified for her job, as evidenced by her training and work experience both with Defendant and prior to her employment with Defendant. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

74. Plaintiff suffered adverse employment action when she was effectively terminated and/or constructively discharged as alleged herein.

75. These adverse employment actions were taken with discriminatory intent as evidenced by the work environment and conduct of Plaintiff's superiors as described herein.

76. Plaintiff was treated differently from similarly situated employees outside of her protected class.

77. Upon information and belief, Plaintiff was replaced by a White GM.

78. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

**THIRD CAUSE OF ACTION**
**Violation of Title VII 42 U.S.C. § 2000e, et. seq.**
**Racial Discrimination—Disparate Treatment in Privileges & Benefits of Employment**

79. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

80. As an African American female, Plaintiff belongs to a statutorily protected category.

81. Plaintiff was qualified for her job, as evidenced by her training and work experience both with Defendant and prior to her employment with Defendant. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

82. Plaintiff suffered an adverse employment action when she was not provided the same training and opportunities provided to white employees. Specifically, when Plaintiff inquired about another management role, K.M. dissuaded Plaintiff from applying for the role, stating that other employees were a "better fit" for the role due to Plaintiff's appearance.

83. Plaintiff suffered an adverse employment action when she was not compensated as much as similarly situated white employees.

84. Plaintiff suffered an adverse employment action when she was not provided the same help and support as white employees when Defendant's restaurants were suffering from staffing shortages. Specifically, Defendant allowed several restaurants with white GMs to work a modified schedule due to staffing shortages; however, Plaintiff's requests for a modified schedule at the Lawyers Road Restaurant were denied.

85. As a result of Defendant's lack of help and support, Plaintiff was working an average of eighty (80) hours a week from February 2021 to June 2021. Plaintiff was not able to report, and thus went uncompensated for, an average excess of thirty (30) hours per week during the above-stated months.

86. Plaintiff was treated differently from similarly situated employees outside of her protected class as other white GMs did not suffer this same lack of support and compensation.

87. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

### FOURTH CAUSE OF ACTION
### Violation of Title VII 42 U.S.C. § 2000e, et. seq.
### Racial Discrimination—Hostile Work Environment

88. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

89. As an African American female, Plaintiff belongs to a statutorily protected category.

90. Throughout Plaintiff's employment, K.M., Plaintiff's supervisor, subjected Plaintiff to unwelcome conduct as alleged herein, including, but not limited to, insults and belittling comments regarding Plaintiff's race and a lack of support that was afforded to white GMs.

91. Plaintiff was subjected to K.M.'s unwelcome conduct for several months, throughout the time in which K.M. supervised Plaintiff.

92. Z.C., Plaintiff's supervisor, also subjected Plaintiff to unwelcome conduct when he printed off Plaintiff's email to Defendant's Human Resource Department and shared it with employees.

93. K.M. and Z.C.'s conduct was sufficiently severe and/or pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an abusive work environment.

94. Plaintiff actually perceived her work environment to be intimidating, unwelcoming, offensive, and hostile.

95. Ultimately, the unwelcome conduct of both K.M. and Z.C. culminated to a tangible employment action, specifically Plaintiff's firing, or in the alternative, constructive discharge as described herein.

96. As K.M. and Z.C. were Plaintiff's supervisors, and their conduct resulted in a tangible employment action, Defendant is strictly liable for this harassing conduct.

97. Furthermore, Defendant is also liable for the unwelcome conduct that may not have culminated to a tangible employment action, but nevertheless created an intimidating, unwelcoming, and hostile work environment.

98. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

## FIFTH CAUSE OF ACTION
### Violation of 42 U.S.C. § 1981
### Racial Discrimination—Hostile Work Environment & Disparate Treatment

99. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

100. As an African American female, Plaintiff belongs to a statutorily protected category.

101. Plaintiff was qualified for her job, as evidenced by her training and work experience both with Defendant and prior to her employment with Defendant. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

102. K.M. and Z.C., Plaintiff's supervisors, discriminated against Plaintiff as previously described herein, including but not limited to, subjecting her to a hostile work environment, affected the privileges and benefits of Plaintiff's employment, and ultimately causing Plaintiff's discharge.

103. These actions were taken with willful and wanton disregard of Plaintiff's rights under § 1981.

104. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

## SIXTH CAUSE OF ACTION
### Wrongful Discharge as Against Public Policy

105. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

106. Pursuant to N.C.G.S. § 143-422.2(a), it is the public policy of the State of North Carolina "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."

107. Defendant regularly employees more than fifteen employees.

108. As an African American female, Plaintiff belongs to a statutorily protected category.

109. Plaintiff was subjected to discriminatory conduct and a hostile work environment as set forth herein.

110. Despite Plaintiff's job qualifications and performance as previously described herein, Plaintiff was ultimately terminated, or in the alternative, constructively discharged as described herein.

111. These adverse employment actions were taken based on discriminatory reasons as previously set forth herein.

112. The conduct alleged herein violates N.C.G.S. § 143-422.2(a).

113. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

### SEVENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

114. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

115. K.M.'s acts of discrimination, including, but not limited to, insults and belittling comments regarding Plaintiff's race and a lack of support that was afforded to white GMs, were extreme and outrageous.

116. Z.C.'s acts of discrimination, including, but not limited to, sharing Plaintiff's email with other employees and firing Plaintiff, or in the alternative, causing Plaintiff's constructive discharge, were extreme and outrageous.

117. This conduct was performed with intent to cause or with reckless indifference to the likelihood that it would cause Plaintiff's severe emotional distress.

118. Plaintiff suffered severe emotional distress and mental anguish as result of the hostile work environment and adverse employment actions.

119. At all relevant times, K.M. and Z.C. were acting within the scope of their employment. Thus, Defendant is vicariously liable under the doctrine of *respondeat superior*.

120. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

### EIGHTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

121. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

122. K.M. and Z.C., as Plaintiff's supervisors, had duties to exercise reasonable care to avoid cause emotional distress to Plaintiff.

123. K.M. and Z.C.'s discriminatory conduct as alleged hereinabove breached their duties of care owed to Plaintiff.

17

Case 3:24-cv-00132-RJC-SCR    Document 1    Filed 02/03/24    Page 17 of 20

124. K.M. and Z.C. could reasonably foresee that their conduct would cause Plaintiff to suffer severe emotional distress.

125. Plaintiff suffered severe emotional distress as a result of K.M and Z.C.'s conduct.

126. At all relevant times, K.M. and Z.C. were acting within the scope of their employment. Thus, Defendant is vicariously liable under the doctrine of *respondeat superior*.

127. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

1. That the Court empanel a jury to hear her cause;

2. A judgment declaring that the practices complained of herein are unlawful and in violation of both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.;*

3. All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits she would have received but for Defendant's unlawful employment practices, and for emotional distress, humiliation, embarrassment, and anguish;

4. Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and/or intentional conduct;

5. Award Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

6. Pre-judgment and post-judgment interest, as provided by law;

7. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

8. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

9. Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors.

10. Training of all employees regarding hostile work environment, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors.

11. Supervisory discipline up to and including termination for any employee who engages in discrimination based upon race, including any employee who engages in discriminatory practices.

12. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

13. Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

*(The rest of this page has been intentionally left blank.)*

Respectfully submitted,

This the 3rd day of February, 2024.

**Burts Law, PLLC**

*/s/ M. Anthony Burts II*
M. Anthony Burts II
Attorney for Plaintiff
PO Box 102
Newton, NC 28658
T. (704) 751-0455
F. (704) 413-3882
NCSB# 49878